Dorn *v.* Hutson.

4-9575                                    243 S. W. 2d 11

Opinion delivered November 5, 1951.

*Bob Bailey, Jr.,* and *Bob Bailey,* for appellant.

*Reece Caudle* and *Richard Mobley,* for appellee.

Robinson, J. Appellee owned a farm subject to a life estate of her sister, Sophia, and her mother, Therese Dorn, and in May, 1948, entered into negotiations with her brother, Henry Dorn, one of the appellants herein, for sale of the place. The negotiations resulted in a deed from appellee, Anna Dorn Hutson, to Henry Dorn and his wife, Belle Dorn, the deed showing a consideration of $2,000 and reserving a life estate in Sophia Dorn and Therese Dorn.

Appellee was never paid anything for her interest. Appellant is contending that, under the agreement, appellee was not to receive anything; that he was to pay a mortgage indebtedness of $3,000; $275 to a Mrs. Mourning; $118 to one Bocksnick, and that he was to pay nothing else.

The Chancellor found that, according to the agreement for purchase of the property, appellants were to pay to appellee $2,000, less $275 to be paid Mrs. Mourning and $118 to Bocksnick, making a total owed by appellants to appellee of $1,607.

On May 3rd, 1948, appellant wrote the appellee, excerpts from the letter being as follows: ''Now, you say in your letter that you would sell me the home place for $6,000. If I understand everything you want $2,000,

and the loan is $3,000, and Sophia $1,000. Now, I will give $6,000 for the place, and Mama and Sophia can live there.''

On June 8th, appellant wrote: ''As for the payments you have made on the loan, that is just like putting money in the bank for you as I am going to pay out as I agreed $6,000 less any payments I make, so you get all that back.

''As for a bargain, there isn't any. I am doing this for Mother's sake. I know I am paying more than the place is worth, but I am figuring to sell this one the same way.''

The appellant claims that all negotiations for the purchase of the place had been ended in a telephone conversation with his sister, Anna, in June when he refused to pay $300 for an option; that negotiations for the purchase of the property were renewed in a letter which he received from his sister in July, and that he bought the property according to the terms of this letter, which is as follows:

''If it isn't too late to accept your offer on the farm, I have no choice right now to do otherwise. I can't work in Texas until I take the State Board exam, here in August 3, and if I have to leave J. B. to go back to Arkansas, it means not ever coming back, for he is due some consideration too. The farm has been nothing but expense to us and hard feeling—which I don't blame him too much. If it means losing all the money I've put on the farm that's it too. I owe Johnnie Bocksnick $118 for the work he did on the farm and Mrs. B. A. Mourning a balance of $275. Mrs. Mourning is a personal friend of mine and I was to pay it back $50 a month and have. I borrowed it to buy lumber and roofing, until I got the money from the loan, but Johnnie's figures were small to begin with and costs lots more than he had figured on so as the result there wasn't enough money left to pay Mrs. Mourning in full. She doesn't need all of it or she would probably wait until I could work to pay her. The reason I had ask for the $300 when I did it would have settled everything until I could work.

"Instead of giving you a legal option I'd rather change the deed to you, that is if you still want the place. If you pay these bills I have mentioned, and then when you do sell your farm if you want to pay me the rest you can if not just forget it. I can always make my own living and you seem to think you are paying too much for the farm anyway. All I want is to get rid of it and let someone else worry awhile, that's all it has ever meant to me. I can say one thing Sophia is paid. I don't owe her one penny for giving me my beauty course, and it doesn't mean I have to take care of her the rest of my life. Sophia has the deeds to the farm and she can take it to an attorney there in Russellville and have the deed changed. There will be some charges to that. You may have to pay for having it recorded, etc., also the fee for handling it, but that will save the one thing of making an option.

"Please don't wait long for writing me one way or other. You have a reason for being sore at me, and I apologize, but if you knew how much it means to me and how upset I have been doing up there on the farm, and what I've had to put up with too, after you live there awhile you'll know what I mean.

"Hope your family is all well now, you have had your share of sickness, maybe it will be over now. Let me hear from you soon."

The above letter was dated July 3rd, and it is clear that Henry received it before writing his letter of July 8th, in which he states: "Received your letter this morning . . . About the farm, I will do that—pay J. Bocksnick $118 and Mrs. Mourning $275. . . . I am not forgetting anything. I am going to pay you all you ask for, a total of $6,000. As to changing the deed you should do that yourself. Make the deed to both Belle and me. I am sending in another payment to the loan company as it is due, I believe, the 15th, but will wait until I receive the deed and where to send the other payments, Mrs. Mourning. Hope everything is clear now."

After receiving Henry's letter of July 8th, Anna executed and delivered a deed which shows the considera-

tion to be $2,000 and reserves a life estate in her sister and mother. Appellants have received the deed and appellee has been paid nothing for her interest.

The decree is affirmed.